UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TRUSTEES OF THE LOOCAL 6559 PENSION
FUND, *formerly known as* TRUSTEES OF THE
UNITY PENSION FUND LOCAL 210
RETIREMENT PLAN,

                    Plaintiffs,

    -against-

APPLE DIRECT MAIL SERVICE LTD.,

                    Defendant.
------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
20-cv-2920 (DRH)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPAAA"), 29 U.S.C. §§ 1381 et seq., on referral from the Honorable Denis R. Hurley for Report and Recommendation, is Plaintiffs' Trustees of the Local 6559 Pension Fund, formerly known as Trustees of the Unity Pension Fund Local 210 Retirement Plan ("Plaintiffs" or the "Trustees"), motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Plaintiffs' Motion for Default Judgment, ("Plaintiffs' Motion" or "Pl. Mot."), Docket Entry ("DE") [12].

      By way of Complaint dated July 1, 2020, Plaintiffs commenced this action against Defendant Apple Direct Mail Service Ltd. ("Defendant" or "Apple") for unpaid withdrawal liability that Apple incurred as a result of its permanent cessation of operations in or about August 2016, which resulted in the cessation of Defendant's

1

contributions to the Local 6559 Pension Fund (the "Fund"). *See* Complaint ("Compl."), DE [1]. For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' Motion be granted in its entirety.

## I.   BACKGROUND

### A. Facts

All relevant facts are taken from the Complaint, and assumed true for purposes of resolving this motion. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

The Fund is a "Taft-Hartley Trust Fund with Trustees equally represented by the Local 6559 Warehouse & Production Employees Union [formerly known as] the Local Warehouse and Production Employees, Union Local 210, AFL-CIO (the "Union") and employers that contribute to the Fund to provide retirement income benefits to employees." Compl. ¶ 3. Based on these facts, the Fund "is an 'employee pension benefit plan' within the meaning of Section 302(c)(3) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §186(c)(5) and 29 U.S.C. §1002(2)." *Id.* The Fund, which is administered from its headquarters in Port Washington, New York, is maintained pursuant to collective bargaining agreements between employee organizations and various employers, which require such employers to financially contribute to the Fund. *Id.* at ¶ 4. As such, the Fund is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37), and is authorized to commence this action under Section 502(d)(l) of ERISA and 29 U.S.C. §1132(d)(l). *Id.* The Fund is administered by the Trustees, a board composed of an equal number of

employer and employee representatives, as required by Section 302(c)(5) of the LMRA, and are considered the "plan sponsor(s)" with respect to the Fund. *Id.* at ¶ 5.

Defendant Apple is a New York corporation with its principal place of business at 33 35th Street, 2nd Floor, Brooklyn, New York 11232, and is considered an "employer" within the meaning of Sections 3(5), (11) and (12) of ERISA, 29 U.S.C. §1002(5), (11) and (12) and Section 301(a) of the LMRA, 19 U.S.C. §185(a). *Id.* at ¶ 6. Apple "was a party to a series of collective bargaining agreements with the Union," pursuant to which it was "obligated to make contributions to the Fund on behalf of certain employees." *Id.* at ¶ 7.

On or about May 1, 2013, Defendant became obligated to contribute to the Fund pursuant to a collective bargaining agreement with the Union. *Id.* at ¶ 8; *see also* Labor Agreement Between Apple and the Union (the "CBA"), DE [13-1]. Apple contributed to the Fund pursuant to the CBA until on or about August 1, 2016, when it allegedly "completely withdrew from the Fund within the meaning of Section 4203(a) of ERISA and 29 U.S.C. §1383(a)," by ceasing all operations and contributions to the Fund." Compl. ¶ 10. As a result of Defendant's withdrawal from the Fund, Apple allegedly "became liable to the Fund for withdrawal liability in the amount of $97,927.00 pursuant to Section 4201 of ERISA, 29 U.S.C. §1381." *Id.* at ¶ 11.

On or about September 7, 2016, after determining the amount of Defendant's alleged withdrawal liability, the Fund notified Apple that it had "completely withdrawn from the Fund" and assessed its "withdrawal liability in the amount of $97,927.00 and of the schedule for liability payments and demanded payment, in

3

accordance with the schedule," as required by Sections 4202 and 4219(b)(1) of ERISA and 29 U.S.C. §§1382 and 1399(b)(l). *Id.* at ¶ 12; *see also* Compl. Ex. A (Notice and Demand letter dated September 7, 2016). Plaintiffs notified Defendant that it "was required to make quarterly withdrawal liability payments in the amount of $19,040.00 for five (5) quarters and a final or sixth (6th) payment in the amount of $4,142.00." Compl. ¶ 13. Under the proposed schedule, the first quarterly payment was due on or before November 1, 2016 and payments were to be made quarterly thereafter, until the outstanding withdrawal liability was paid *Id.*

The Trustees further notified Apple that, "should it fail to make its quarterly withdrawal liability payment when due and that, if such failure was not cured within sixty (60) days, [Defendant] would be in default [of the CBA], within the meaning of Sections 4219(c)(5) of ERISA and 29 U.S.C. § 1399(c)(5), and that the Fund would pursue all legal remedies available to it under ERISA." *Id.* at ¶ 14. By reason of Defendant's failure to make withdrawal liability payments from September 2016 to date, and its default under the CBA, Plaintiffs declared Apple in default of the CBA, and provided Defendant with "written notices of acceleration of withdrawal liability payment upon default." *Id.* at ¶ 15; *see also* Compl. Ex. B (Notices of Default dated August 18, 2017, and June 26, 2018). To date, the Fund has not received any payment of the outstanding withdrawal liability. Compl. ¶¶ 16-17.

### B. Procedural History

Based on the above, the Trustees commenced this action against Apple on July 1, 2020. *See* Compl. The Complaint – seeking declaratory, compensatory, punitive

4

and equitable relief – alleges that Defendant is liable to Plaintiffs for its outstanding withdrawal liability, interest, attorney's fees and costs associated with its complete withdrawal from the Fund. *See* Compl. On October 28, 2020, after the time for Apple to appear or otherwise defend this action passed, the Trustees requested a Certificate of Default, *see* DE [8], and the Clerk of the Court entered a default against Defendant on October 30, 2020. *See* DE [11]. On November 5, 2020, Plaintiffs filed the instant unopposed motion, which Judge Hurley referred to this Court for a report and recommendation as to whether Plaintiffs' Motion should be granted, and if so, to determine the appropriate remedies. *See* Electronic Order dated November 6, 2020. For the reasons set forth herein, it is respectfully recommended that Plaintiffs' Motion be granted in its entirety.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Vermont Teddy Bear Co.*, 373 F.3d at 246; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment

5

is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. Jun. 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

### III. DISCUSSION

The Complaint alleges that Apple is liable to the Trustees for its failure to pay withdrawal liability, interest, attorney's fees and costs associated with its complete withdrawal from the Fund, pursuant to sections 4201 through 4225 and 4301 of ERISA. *See* Compl. ¶ 1.

6

As to relief, Plaintiffs specifically demand damages in the amount of $119,515.94, which includes: (i) the unpaid withdrawal liability of $97,927.00; (ii) $15,515.94 in interest from September 7, 2016 through July 1, 2020 at a rate of 4.000%, along with interest at the same rate until judgment is entered, and at the statutory rate thereafter; (iii) attorney's fees of $5,970.00; and (iv) filing fees and costs of $470.00. *See* Plaintiffs' Statement of Damages ("Damages Stmt."), DE [12-2], at 1. The Trustees also seek an Order permitting the Fund "the right to audit [Defendant] for additional contributions…." October 30, 2020 Affidavit of Lauren Kugielska in Support of Plaintiffs' Motion for Default Judgment ("Kugielska Aff."), DE [13], at 9. For the reasons set forth herein, it is respectfully recommended that Plaintiffs' Motion be granted in its entirety, and that the Trustees be awarded the relief described below.

### A. Liability

Initially, Plaintiffs allege that Apple is liable under sections 502(g)(2), 4219(c) and 4301(b) of ERISA and section 301 of the LMRA. If an employer who is required to contribute to a plan withdraws from that plan, the employer becomes subject to withdrawal liability. *See* 29 U.S.C. § 1381(a). An employer "completely withdraws" from a plan by "(1) permanently ceas[ing] to have an obligation to contribute under the plan or (2) permanently ceas[ing] all covered operations under the plan." *See* 29 U.S.C. § 1383(a). The Complaint adequately alleges, and Defendant's default establishes, that Apple permanently ceased to have an obligation to contribute under the plan on August 1, 2016, and thereby incurred withdrawal liability. Compl. ¶ 10.

7

In order to recover for withdrawal liability from an employer, a plan must notify the employer of the amount of liability, include with the notice a schedule for payment and demand payment in accordance with the included schedule. *See ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988); *Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214, 223 (E.D.N.Y. 2009) (citing 29 U.S.C. § 1399). An employer may, within 90 days of receipt of the notice, request review of the withdrawal determination. *See* 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)(1). Any unresolved dispute concerning the plan's determination of liability must be addressed through arbitration. *Id.* If no arbitration hearing is initiated within the statutorily designated timeframe, then the plan's determination of the withdrawal liability becomes final and binding and must be paid in accordance with the schedule provided by the plan. *See* 29 U.S.C. § 1401(b)(1).

Indeed, no supporting documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration. *See, e.g., Rao v. Prest Metals*, 149 F. Supp. 2d 1, 9-10 (E.D.N.Y. 2001) ("ERISA is a 'pay-first-question-later' statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability."); *see also Trustees Of Local 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011); *Board. of Trustees of the Private Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp.*, No. 10-cv-195, 2010 WL 5621275, at *3

8

(E.D.N.Y. Sept. 17, 2010), *report and recommendation adopted*, No. 10-cv-195, 2011 WL 197588 (E.D.N.Y. Jan. 20, 2011).

Applying the above standards, the Court finds that the Trustees have established Defendant's liability. Notwithstanding that Apple's default constitutes "an admission of all well-pleaded allegations against the defaulting party," *see Vermont Teddy Bear Co.*, 373 F.3d at 244; *see also Gesualdi v. Nastasi & Associates, Inc.*, No. 19-cv-2077, 2020 WL 966326, at *2-3 (E.D.N.Y. Feb. 11, 2021), *report and recommendation adopted*, No. 19-cv-2077, 2021 WL 1115606, (E.D.N.Y. Mar. 24, 2021), the Court must "determine whether the [plaintiff]'s allegations establish [defendant]'s liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

Here, the Complaint adequately alleges, and the Defendant's default establishes, that Apple completely withdrew from the Fund, that it was properly notified of its withdrawal liability and payment obligations and that it did not seek review of the assessment. *See* Compl. ¶¶ 7-14. After Defendant failed to make timely payment of the first installment of its withdrawal liability, the Fund gave it 60 days to cure and warned of the consequences of default. *Id.* at ¶ 14. Apple failed to respond or cure. *Id.* Based on the record provided, the Court finds that the Trustees have sufficiently established Defendant's liability under ERISA for withdrawal liability, and thus respectfully recommends that Plaintiffs' Motion for default judgment be granted.

9

B. **Damages and Remedies**

Once liability is established, the court must ascertain damages with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014). To prove damages, the plaintiff need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

Here, Plaintiffs seek to recover damages in the amount of $119,515.94, inclusive of: (i) the unpaid withdrawal liability of $97,927.00; (ii) $15,515.94 in interest from September 7, 2016 through Jul. 1, 2020 at a rate of 4.000%, along with interest at the same rate until judgment is entered, and at the statutory rate thereafter; (iii) attorney's fees of $5,970.00; and (iv) filing fees and costs of $470.00 *See* Damages Stmt. at 1. The Trustees also seek an Order permitting the Fund "the right to audit [Defendant] for additional contributions…." Kugielska Aff. at 9.

1. **Unpaid Withdrawal Liability**

Pursuant to Section 4201 of ERISA, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined…to be the withdrawal liability." 29 U.S.C. § 1381. As demonstrated by the allegations of the Complaint

10

and the Kugielska Affidavit, the Fund calculated Apple's withdrawal liability, in accordance with the provisions of ERISA, to be $97,927.00. Kugielska Aff. ¶ 8. Defendant took no action to challenge this assessment. Accordingly, the Court recommends that Plaintiffs be awarded $97,927.00 in damages representing Apple's unpaid withdrawal liability.

### 2. Interest

The Trustees also seek interest on the outstanding withdrawal liability. *See generally* Damages Stmt. ERISA provides that following a successful action to recover unpaid withdrawal liability, courts are permitted to award interest on the outstanding withdrawal liability, and that such interest "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2); *see also Trustees of Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds v. Plus K Constr. Inc.*, No. 20-cv-1643, 2021 WL 1199566, at *6 (S.D.N.Y. Mar. 30, 2021); *Trustees of Local 111 Pension Tr. Fund v Manhattan Ignition Corp.*, No. 19-cv-6888, 2020 WL 9814105, at *1 (E.D.N.Y. Oct. 29, 2020), *report and recommendation adopted as mod sub nom. Trustees of Local 111 Pension Fund v Manhattan Ignition Corp.*, No. 19-cv-6888, 2021 WL 242261 (E.D.N.Y. Jan. 25, 2021); *Broach v. Metro. Exposition Servs., Inc.*, No. 20-cv-0165, 2020 WL 3892509, at *7 (S.D.N.Y. Jul. 10, 2020).

In the ERISA context, interest should be calculated from the date a missed payment first becomes due. *See Mason Tenders Dist. Council Welfare Fund v. Mackroyce Const. Corp.*, No. 96-cv-4693, 1998 WL 193075, at *2-3 (S.D.N.Y. Apr. 22,

1998) (internal citations omitted). Here, because the CBA sets forth no interest rate, the Fund should receive interest as calculated pursuant to 26 U.S.C. § 6621, under which the applicable interest rate "shall be the sum of (A) the Federal short-term rate established under subsection (b), plus (B) 3 percentage points." 26 U.S.C. § 6621(a)(2).

Based on the calculations set forth in § 6621(a)(2), the Court concludes that an interest rate of four percent per year, subject to yearly compounding, *see* 26 U.S.C. § 6622, should be applied to Plaintiffs' determination of Apple's withdrawal liability determination, beginning from the date of the Notice and Demand, September 7, 2016, through to the date of this Report and Recommendation. Accordingly, the Court respectfully recommends that the Trustees be awarded prejudgment interest in the amount of $20,248.72 with additional interest to be calculated at a rate of $12.55 per day through the date of a judgment entered in this matter.

### 3. Attorney's Fees

Plaintiffs also seek attorney's fees in the amount of five thousand nine hundred seventy dollars ($5,970), based on an hourly rate of three hundred dollars ($300) for the nineteen and nine-tenths (19.90) hours of work performed by Lauren Kugielska ("Kugielska"), an associate at Barnes, Iaccarino & Shepherd LLP ("Barnes"). Kugielska has "acted as [the Trustees'] lead counsel" in this matter and has prior "experience in litigation involving benefit fund contribution obligations." Kugielska Aff. ¶¶ 32-35.

12

Section 502(g)(2) of ERISA provides, in relevant part, that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan...(D) reasonable attorney's fees and costs of the action, to be paid by the defendant...." 29 U.S.C. § 1132(g)(2). "[A]n award of attorney fees and costs is...mandatory under subsection (2), of section 1132(g)." *New York State Teamsters Conf. Pension & Ret. Fund v. Boening Bros., Inc.*, 92 F.3d 127, 135 (2d Cir. 1996); *see also Richardson v. Laws Constr. Corp.*, 557 Fed. App'x 57, 59 (2d Cir. Feb. 13, 2014) (summary order) ("When trustees prevail in an ERISA action for unpaid contributions, 29 U.S.C. § 1132(g)(2)(D) mandates an award of 'reasonable attorney's fees and costs of the action, to be paid by the defendant'").

"In calculating attorney's fees, the district court must first determine the lodestar--the product of a reasonable hourly rate and the reasonable number of hours required by the case--which creates a presumptively reasonable fee." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed. *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941.

"[A] presumptively reasonable [attorney's] fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the

13

minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted); *see also Bergerson v. New York State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). Under the "forum rule" applicable in this Circuit, "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672 (2010) ("[T]he lodestar looks to the prevailing market rates in the relevant community."). Thus, in determining a reasonable hourly rate, the court should consider the prevailing rates of lawyers with comparable skill, experience and reputation in the district in which the action was commenced and litigated. *See Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). Rates should be "current rather than historic hourly rates." *Reiter*, 457 F.3d at 232.

Applying these standards, the Court finds that the hourly rate billed by Barnes is commensurate with current prevailing hourly rates for attorneys with comparable skill, experience and reputation to Kugielska, practicing in the Eastern District of New York. *See, e.g. CIT Bank, N.A. v. Mitchell*, No. 17-cv-1969, 2021 WL 54081, at *6 (E.D.N.Y. Jan. 6, 2021) ("Hourly rates in the Eastern District of New York generally range from $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates and $85.00 to $100.00 for

14

paralegals."); *Trustees of Local 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-cv-1809, 2020 WL 7034025, at *12 (E.D.N.Y. Sept. 23, 2020), *report and recommendation adopted*, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020) ("In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour,…rates ranging from $200 to $300 for senior associates, and $100 to $200 for junior associates,…and rates ranging from $70 to $90 per hour for paralegals and legal assistants.... However, courts have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range."). Accordingly, the Court finds the hourly rate at which Barnes billed for Kugielska's services to be reasonable.

The Court further concludes that the total time expended by Kugielska – nineteen and nine-tenths hours (19.90) – is reasonable. *See, e.g. Gesualdi*, 2020 WL 966326, at *2-3 (finding that the approximately thirty-two and six-tenths hours billed in a motion for a default judgment against an employer for unpaid contributions was reasonable); *Trustees of Local 813 Pension Tr. Fund v. Rizzo Envtl. Services Corp.*, No. 19-cv-6622, 2020 WL 7249289, at *9 (E.D.N.Y. Oct. 31, 2020), *report and recommendation adopted*, No. 19-cv-6622, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020) (finding that seventy-seven and three-quarters (77.75) hours billed in an action to recover unpaid contributions and withdrawal liability was reasonable). Accordingly, the Court respectfully recommends that the Trustees be awarded attorney's fees in the total amount of five thousand nine hundred seventy dollars ($5,970.00).

### 4. Costs and Disbursements

Plaintiffs further seek a total of $470.00 in costs and disbursements, comprised of: (i) the $400.00 filing fee in this action; and (ii) $70.00 for service of the Summons and Complaint. *See* Damages Stmt. Section 1132(g)(2)(D) of ERISA permits the Trustees to seek an award of court costs and disbursements in this action, to be paid by Apple. *See* 29 U.S.C. § 1132(g)(2)(D).

In this Circuit, reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Notwithstanding, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. Jul. 21, 2011)). A party is not entitled to recover costs for which it provides inadequate substantiation. *See Douyon v. N.Y. Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) (finding that without underlying documentation of itemized expenses, the Court has "no way of confirming" that costs were incurred by counsel); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-cv-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation).

As an initial matter, the Court takes judicial notice that the Trustees incurred the $400.00 filing fee in this action. *See* DE [1]; *see also Douyon*, 49 F. Supp. 3d at 352 (taking judicial notice of the filing fee reflected on the docket). Additionally,

16

Plaintiffs have submitted an invoice from Servico that sufficiently evidences the $70.00 fee in connection with serving the Summons and Complaint upon Defendant. *See* Kugielska Aff., Ex. H (Jul. 3, 2020 invoice for service of process upon Apple). Accordingly, the Court recommends that the Trustees be awarded a total of $470.00 for fees and disbursements, including post-judgment interest thereon pursuant to 28 U.S.C. § 1961(a).

### 5. Apple to Submit to an Audit

Plaintiffs next seek an Order requiring Defendant to submit to an audit of its books and records to determine if additional contributions are due and owing. Under ERISA, a court is authorized to award "such other legal or equitable relief as [it] deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Among the potential relief, courts may direct a defendant to comply with a requirement under a CBA that it conduct an audit of its records. *See Trustees of the N.Y. City Dist. Council of Carpenters Pension Fund v. Vintage Tile & Flooring, Inc.*, No. 14-cv-6450, 2015 WL 3797273, at *5-6 (S.D.N.Y. June 18, 2015); *Lanzafame v. Dana Restoration, Inc.*, No. 09-cv-873, 2010 WL 6267657, at *13-14 (E.D.N.Y. Aug. 12, 2010). Courts direct defendants to submit to an audit when, without such relief, ERISA multiemployer benefit plans would not be able to determine the amount of the defendants' delinquent contributions. *See Local Union No. 40 of the Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Win Constr., Inc.*, 88 F. Supp. 3d 250, 277 (S.D.N.Y. 2015).

Here, the CBA requires Apple to submit to an audit, when requested by Plaintiffs, to determine the amount of any delinquent contributions. *See* CBA at 5-6. Accordingly, the Court respectfully recommends that the Trustees be permitted to audit Defendant's books and records within 30 days of the entry of the Judgment in this matter.

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiffs' Motion be granted in its entirety, and that Plaintiffs be awarded damages in the amount of $124,615.72, inclusive of the following:  (1) $97,927.00 in unpaid withdrawal liability; (2) interest, through the date of this Report and Recommendation, in the amount of $20,248.72, with additional interest to be calculated at a rate of $12.55 per day through the date of judgment herein; (3) attorney's fees in the amount of $5,970.00; and (4) $470.00 in costs. The Court further recommends that the Trustees be permitted to audit Apple's books and records within 30 days of the entry of a judgment in this matter, to determine the amount of any delinquent contributions.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below.  Plaintiffs are directed to serve a copy of it on Defendant via first-class mail and promptly file proof of service by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ.

18

P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at \*2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         June 21, 2021

<u>/s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge